**Rhoda TANG, Plaintiff,**

v.

**STATE OF RHODE ISLAND, DEPART-MENT OF ELDERLY AFFAIRS, Maureen Maigret, in her individual and official capacity as Director of Department of Elderly Affairs, and Susan Sweet, in her individual and official capacity as Associate Director of Department of Elderly Affairs, Defendants.**

**Civ. A. No. 95–046 P.**

United States District Court,
D. Rhode Island.

Nov. 1, 1995.

Marc Gursky, Fidelma L. Fitzpatrick, Providence, RI, for plaintiff.

Rebecca Tedford Partington, Jametta O. Alston, Thomas A. Palombo, R.I. Attorney General's Office, Providence, RI, for defendants.

### MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This is an action alleging employment discrimination based on race, color, and national origin. The defendants have made a motion, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the plaintiff's claims that are based on her 1989 termination. The defendants argued that, under the doctrine of res judicata, a prior stipulated arbitration award barred the plaintiff's current federal civil rights claims relating to that termination. Since all the plaintiff's allegations must be accepted as true, the defendant's motion to dismiss is denied for the reasons detailed below.

### FACTUAL HISTORY

The plaintiff, Rhoda Tang, is an Asian–American woman employed as a Public Health Nutritionist by the Department of Elderly Affairs (DEA). Ms. Tang started working for the DEA in February 1974. She first filed a charge of employment discrimination against the DEA in February 1987, and this claim was later settled. In March 1989, Ms. Tang was terminated. Shortly thereafter, Ms. Tang filed a grievance alleging unjust termination and discrimination under a collective bargaining agreement with her union representative, Local 2895 of Council 94, AFSCME. Ms. Tang also filed charges with the Rhode Island Commission on Human Rights (RICHR) and the Equal Employment Opportunity Commission (EEOC).

On May 20, 1991, the DEA and the plaintiff's union allegedly agreed to be bound by an arbitration decision. Under the arbitration award, the DEA agreed to reinstate Ms. Tang and compensate her for lost wages, and Ms. Tang agreed to withdraw the discrimination charges filed with the RICHR and EEOC. The plaintiff alleges that the DEA refused to comply with that agreement. Therefore, her union filed a petition for confirmation of the Stipulated Arbitration Award with the Providence Superior Court, which was granted in October 1991. According to the plaintiff's allegations, the DEA reinstated Ms. Tang in February 1992 and paid her back pay and benefits in March 1992. In March 1994, the Superior Court held DEA in civil contempt for refusing to pay Ms. Tang interest on her back wages.

The plaintiff now alleges a series of acts of discrimination and harassment, up to and including her March 1989 termination, and also after her February 1992 reinstatement. The plaintiff claims that these acts constitute employment discrimination and retaliation under Title VII (42 U.S.C. §§ 2000e–2, e–3) [1] and R.I.Gen.Laws § 28–5–7, and deprivation of her civil rights under 42 U.S.C. § 1983 (hereinafter "§ 1983") and R.I.Gen.Laws. § 42–112–1.

On April 3, 1995, the defendants made a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

1. In this Court's Memorandum and Order of August 21, 1995, the plaintiff's Title VII claims were dismissed without prejudice because Ms. Tang had not obtained a right-to-sue letter from EEOC. Since Rhode Island state law provisions of R.I.Gen.Laws § 28–5–7 are parallel to Title VII, and since I anticipate that Ms. Tang will obtain a right-to-sue letter, I will consider this issue in light of both her Title VII and § 1983 claims.

This included a motion to dismiss the plaintiff's claims based on her March 1989 termination under the doctrine of res judicata. On August 21, 1995, I published a Memorandum and Order, in which I reserved ruling on this issue in anticipation of further briefing by the parties.

## MOTION TO DISMISS

The standard for granting a motion to dismiss is a rigorous one. A court should not grant a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted). In determining whether a set of facts could support the claim, "a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[ ]." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993). As discussed below, in the present case the success of the defendant's motion to dismiss depends upon whether the prior award was a binding arbitrator's decision or a negotiated settlement. The parties disagree as to the nature of the award. Since this is a motion to dismiss, I must take all allegations of the plaintiff as true and therefore will consider the prior award to be a binding arbitrator's decision. However, in the interest of judicial economy and in order to focus on the crux of this dispute, this Order outlines all the legal principles applicable to this issue. I discuss first the res judicata effect of arbitration awards. Second I outline the legal consequences if the award was actually a negotiated settlement. Finally I note the admissibility of the 1989 termination as evidence, even if the claim itself were precluded.

## PRECLUSIVE EFFECT OF ARBITRATION AWARDS

■ The defendants assert that Ms. Tang's claims based on her 1989 termination are precluded by a Stipulated Arbitration Award which was confirmed by Rhode Island Superior Court. Ms. Tang's union representative initiated this arbitration under a collective bargaining agreement. Under the full faith and credit statute, 28 U.S.C. § 1738 (1994), federal courts must give state court judgments the res judicata effect that state law prescribes. *Isaac v. Schwartz*, 706 F.2d 15 (1st Cir.1983). As the alleged prior decision in this case occurred in Rhode Island, Rhode Island law regarding res judicata applies. According to the Rhode Island Supreme Court, a cause of action is barred in a subsequent proceeding if the prior litigation involved (1) the same parties, (2) the same issues, (3) the same claims for relief, and (4) finality of judgment. *Estate of Bassett v. Stone*, 458 A.2d 1078, 1080 (R.I.1983). While the parties in the present case do not dispute that the same parties were involved in the prior arbitration, they do dispute whether the claims are the same and whether there was a final judgment. Because no courts have decided whether Rhode Island law requires that arbitration awards preclude later civil rights and Title VII suits in federal court, this Court must look to other jurisdictions.

■ The United States Supreme Court has stated: "In sum, Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 49, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). Arbitration under a collective bargaining agreement does not preclude a Title VII claim based on the same factual circumstances because of the limited expertise of a labor arbitrator. *Id.* at 53, 94 S.Ct. at 1021. Such arbitration is based on "the law of the shop, not the law of the land" and may be influenced by the interests of the union pursuing the grievance rather than by the interests of the individual. *Id.* at 51–53, 94 S.Ct. at 1020–21. The Supreme Court has also found that labor arbitration awards do not preclude federal civil rights suits under 42 U.S.C. § 1983 that are based on the same

factual circumstances.[2] *McDonald v. West Branch, Michigan,* 466 U.S. 284, 292, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302 (1984). In a more recent case, *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Supreme Court held that a prior agreement to arbitrate employment disputes was enforceable in relation to Age Discrimination in Employment Act (ADEA) claims. However, in *Gilmer,* there was a pre-discrimination agreement to arbitrate statutory claims, the arbitration was not limited to violations of a collective bargaining agreement, and the case was decided under the Federal Arbitration Act, 9 U.S.C. § 1 et. seq., which favors arbitration agreements. *Id.* at 35, 111 S.Ct. at 1656. In contrast, the instant case did not involve any pre-existing agreement to arbitrate civil rights claims. Instead, as in *Gardner–Denver,* the arbitration was limited to determining the plaintiff's rights under a collective bargaining agreement.

■ The defendants may attempt to distinguish this case from the precedent cited above because Ms. Tang was granted relief for her termination in the prior arbitration. "Where, as here, the employer has prevailed at arbitration, there, of course, can be no duplicative recovery. But even in cases where the employee has first prevailed, judicial relief can be structured to avoid such windfall gains." *Gardner–Denver,* 415 U.S. at 51 n. 14, 94 S.Ct. at 1021 n. 14; *see also Bowe v. Colgate–Palmolive Co.,* 416 F.2d 711, 715 (7th Cir.1969) (holding that trial court erred in not allowing Title VII claim to be pursued both in court and through arbitration as long as relief was not duplicated). In *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1553–54 (10th Cir.1988), the court decided that an arbitrator's award for the plaintiff did not foreclose his federal ADEA claim, but that his recovery in federal court would be offset by the award received previously.

■ However, a future claim can be precluded if the prior award was so complete that the plaintiff could receive no additional relief in a federal suit. The Supreme Court has stated that "if the relief obtained by the employee at arbitration were fully equivalent to that obtainable under Title VII, there would be no further relief for the court to grant and hence no need for the employee to institute suit." *Gardner–Denver,* 415 U.S. at 51 n. 14, 94 S.Ct. at 1021 n. 14; *see also Strozier v. General Motors Corp.,* 635 F.2d 424, 426 (5th Cir.1981) (dismissing Title VII and § 1981 claims as fully satisfied where plaintiff received reinstatement and back pay from arbitration and where claim for injunctive relief relating to defendant's disciplinary system had been dismissed). Ms. Tang has received back pay and reinstatement from the arbitration award. In her Complaint to this Court, the plaintiff has requested, *inter alia,* injunctive relief, attorney's fees, and punitive damages. Pl.'s Compl. at 13. Without evaluating the appropriateness of these forms of relief, I note that they were not fully satisfied by the prior arbitration award. Therefore, Ms. Tang's claims relating to her termination of March 1989 have not been fully satisfied by prior relief.

■ The present case is somewhat different from the facts in *Gardner–Denver* because Ms. Tang's arbitrator's award was confirmed by a state court. The defendants cite *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), for the proposition that state court affirmance precludes relitigation of Title VII claims in federal court. In *Kremer,* the state court issued a judgment affirming the decision of the New York Division of Human Rights Appeals Board that the plaintiff's discharge was not the result of discrimination. *Id.* at 466, 102 S.Ct. at 1889. The Supreme Court found that this state court judgment precluded the plaintiff's later suit in federal court, under New York's res judicata law. *Id.* at 467, 102 S.Ct. at 1883. However, the

---

**2.** The *Gardner–Denver* and *McDonald* line of cases applies only to subsequent civil rights claims. As the case before this Court involves civil rights claims, cases cited by the defendants which relate to other claims are irrelevant. *In re The Drexel, Burnham, Lambert Group, Inc.,* 161

B.R. 902 (S.D.N.Y.1993) (trading misconduct); *Autotrol Corp. v. J–F Equip. Co.,* 820 F.Supp. 293 (N.D.Tex.1993) (contract claim); *Pallante v. Paine, Webber, Jackson & Curtis,* 1985 WL 1360 (S.D.N.Y.1985) (misconduct of investors).

**74**

Court carefully distinguished the case from *Gardner–Denver*, on the basis that *Kremer* involved state court review of a state *agency* decision, rather than an arbitration award. *Id.* at 477, 102 S.Ct. at 1895. In the instant case, the prior proceeding was an arbitration award under a collective bargaining agreement. According to Rhode Island law, judicial review of arbitration agreements is very limited:

> "The proper role for the courts in this regard is to determine whether the arbitrator has resolved the grievance by considering the proper sources ... but not to determine whether the arbitrator has resolved the grievance correctly.... As long as the award 'draws its essence' from the contract and is based upon a 'passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end."

*School Comm. of North Providence v. North Providence Fed'n of Teachers, Local No. 920*, 476 A.2d 1037, 1039 (R.I.1984) (quoting *Jacinto v. Egan*, 120 R.I. 907, 391 A.2d 1173, 1176 (1978)); *see also* R.I.Gen.Laws § 28–9–18 (1994). Although the award in the instant case was confirmed by a state court, the court's role, according to the plaintiff, was to determine the award's enforceability, not its accuracy.

Neither the Supreme Court nor the First Circuit has specifically addressed whether an arbitration decision confirmed by a state court has preclusive effect in a later federal civil rights case. The Third Circuit has held that judicial review of a collective bargaining agreement arbitration decision can have collateral estoppel ("issue preclusion") effect on a later Title VII federal case. *Rider v. Pennsylvania*, 850 F.2d 982 (3d Cir.), *cert. denied*, 488 U.S. 993, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988). However, that case can be distinguished from the present situation because both the arbitrator and the state court made decisions regarding the merits of the plaintiffs' Title VII claims, rather than simply their collective bargaining agreement rights. *Id.* at 992. The Third Circuit stated that it might have been persuaded that court review was not a decision on the merits if the state court "had limited its review solely to

whether the arbitrator had properly applied the principles of contract interpretation. However, as we read the Commonwealth Court's opinion, its judgment was derived, in large part, from an independent analysis of the BFOQ [Title VII] question." *Id.* Finally, that case involved collateral estoppel, not res judicata, so identity between prior and current causes of action was not required. *Id.* at 990.

One Ninth Circuit case, *Caldeira v. County of Kauai*, 866 F.2d 1175 (9th Cir.), *cert. denied*, 493 U.S. 817, 110 S.Ct. 69, 107 L.Ed.2d 36 (1989), has held that a state court's confirmation of an arbitration award precluded a later § 1983 civil rights suit in federal court. That court found that the plaintiff had an opportunity to challenge the merits of the arbitrator's decision in state court and failed to do so. *Id.* at 1190. However, another Ninth Circuit case and a later District of Hawaii case reached the opposite conclusion. *Aleem v. General Felt Indus., Inc.*, 661 F.2d 135, 137 (9th Cir.1981) (Title VII); *Lum v. City and County of Honolulu*, 728 F.Supp. 1452, 1456–59 (D.Haw.1989) (Title VII and § 1983). Moreover, the Second and Seventh Circuits have held that collective bargaining agreement arbitration awards that are confirmed by state courts do not preclude later civil rights claims in federal court. *Kirk v. Board of Educ. of Bremen Community High Sch. Dist. No. 228*, 811 F.2d 347 (7th Cir.1987); *Bottini v. Sadore Mgmt. Corp.*, 764 F.2d 116 (2d Cir.1985). First, these courts found that the state court's confirmation of an arbitration award did not involve the same claim as the federal Title VII action. *Kirk*, 811 F.2d at 353–54; *see also Bottini*, 764 F.2d at 121 ("[S]ince the Title VII claim was outside the scope of the arbitration proceeding, it was a fortiori beyond the scope of the Article 75 proceeding brought to enforce the arbitrator's award."). Second, these courts held that because state courts could only review arbitration decisions for gross mistakes or exceeded authority, court confirmation was not a final judgment on the merits. *Kirk*, 811 F.2d at 356–57; *Bottini*, 764 F.2d at 121. As discussed above, Rhode Island also permits only limited review of arbitration awards. Since in this case Ms. Tang alleges that the state

court reviewed the arbitration award only for enforceability, this Court finds that the arbitration related to plaintiff's rights under her collective bargaining agreement rather than to her current civil rights claims, and that the court review was procedural rather than on the merits. Therefore, based on the plaintiff's allegations, the court-confirmed arbitration award does not preclude her current claims which encompass the March 1989 termination.

### PRECLUSIVE EFFECT OF SETTLEMENT

 If the Stipulated Arbitrator's Award in this case constituted a settlement rather than an arbitration decision, then a different standard applies. Because this issue comes before me as a motion to dismiss, I must accept the plaintiff's characterization of the prior award as an arbitration decision. However, in order to clarify the applicable law for any later motions, I will outline the legal consequences if, as the defendants allege, the prior award was a settlement. The Fifth Circuit distinguished prior settlements, where each party accepts a compromise, from arbitrations, where each party is bound to accept the decision of a neutral third party. *Strozier,* 635 F.2d at 425. An employee who freely settles her demand with the employer may not sue on the same cause of action later merely because she grows dissatisfied with the payment for which she settled. *Id.* at 426 (quoting *United States v. Allegheny–Ludlum Indus., Inc.,* 517 F.2d 826, 858 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976)). A Ninth Circuit case cited with approval in *Gardner–Denver* states:

> After an employee accepts an out-of-court settlement for a grievance arising out of a civil rights claim, he will have the burden of proving that what he received was not intended to be a complete settlement of his claim for money damages. If he can prove that the apparent settlement was not based on the full range of issues cognizable under Title VII, or that it was accepted only as a partial settlement because the grievance arbitration machinery was limited in its available remedies, the plaintiff may press for additional money damages.

But payments accepted by a grievant in any event constitute a pro tanto satisfaction of his damage claim.

*Oubichon v. North Am. Rockwell Corp.,* 482 F.2d 569, 574 (9th Cir.1973); *see also Spiridigliozzi v. Bethlehem Mines Corp.,* 558 F.Supp. 734, 736–37 (W.D.Pa.1980) (finding that EEOC-approved pre-determination settlement precluded subsequent suit on same claim, but that claims of later acts in retaliation for original complaint could be brought).

 The District Court of Maine, which was affirmed by the First Circuit, set out a three-part test for determining whether a settlement precludes a subsequent federal civil rights suit: (1) the current cause of action is fully equivalent to the cause of action settled; (2) the relief that could have been obtainable in the settlement is the same as the relief available under the federal statutes; and (3) the plaintiff voluntarily and knowingly entered into the settlement. *Perez v. Maine,* 585 F.Supp. 1535, 1539 (D.Me. 1984), *aff'd. by* 760 F.2d 11 (1st Cir.1985). Thus this Court must first consider whether the settlement and the current claims involve the same cause of action. The Stipulated Arbitration Award stemmed from Ms. Tang's collective bargaining agreement, which is a contractual cause of action, unlike her current federal statutory claims. However, Ms. Tang agreed to withdraw her discrimination charges to the RICHR and EEOC as part of the settlement. Since filing with the RICHR and EEOC is a prerequisite for federal Title VII claims, the settlement must have encompassed the current federal causes of action. The plaintiff may argue that because her termination was part of a continuing violation, any settlement regarding her discharge would not bar a later suit alleging the discharge as one in a series of discriminatory acts. The First Circuit clearly recognizes the "continuing violation theory," in which each new act in an interlinked succession of related acts rewinds the statute of limitations clock for the whole series. *Mack v. Great Atlantic & Pacific Tea Co.,* 871 F.2d 179, 183 (1st Cir.1989). This Court has already ruled that the plaintiff has adequately alleged a continuing violation. Mem. and Order of Aug. 21, 1995. However, if Ms. Tang settled

her claim of discriminatory discharge previously, it cannot be relitigated as part of a "continuing violation" claim. The one case that, to the Court's knowledge, has addressed this issue stated: "Plaintiffs' argument that the continuing violation theory should revive settled claims is contrary to 'the established principle that one who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle.'" *Martin v. Frank,* 788 F.Supp. 821, 826 n. 4 (D.Del.1992) (citations omitted).

Second, this Court must decide whether the same relief could have been obtained under the settlement as is available under Title VII and § 1983. Under the settlement agreement, Ms. Tang was reinstated and received full back pay. Since the settlement agreement was with her employer, the Department of Elderly Affairs, further relief, such as policy changes or a commitment to prevent discrimination in the future, could have been negotiated under the settlement. Therefore the relief the defendant could have consented to in the settlement agreement was commensurate with the relief available under Title VII and § 1983.

Finally, this Court must evaluate whether Ms. Tang's settlement was voluntary and knowing. The *Gardner–Denver* Court stated, in dicta, that if a plaintiff entered into a settlement expressly conditioned on a waiver of her rights under Title VII, the court would have to determine at the outset that her consent was voluntary and knowing. 415 U.S. at 52 n. 15, 94 S.Ct. at 1021 n. 15. The Sixth Circuit has outlined factors to consider in determining whether a Title VII claim has been knowingly and voluntarily waived, including the plaintiff's representation by a personal attorney, the express language in the agreement waiving the plaintiff's Title VII claims, and the plaintiff's voluntary signature on the agreement. *Lyght v. Ford Motor Co.,* 643 F.2d 435, 439–40 (6th Cir. 1981). In *Perez,* the court considered whether the plaintiff was misled or improperly influenced, the plaintiff's awareness of his legal rights, and the defendant's reasonable understanding regarding the scope of the agreement. *Perez,* 585 F.Supp. at 1541–42. According to that court, the plaintiff's subjective belief that he was not settling his federal claims was not dispositive. *Id.* In the instant case, the plaintiff has made no allegations that the Stipulated Arbitration Award was entered into unknowingly or involuntarily. Therefore this Court cannot evaluate whether, if the arbitration award was actually a settlement, the plaintiff's claim relating to the 1989 termination would be precluded.

### EVIDENCE ADMISSIBLE AT TRIAL

During a conference with the Court, the parties discussed the evidentiary admissibility of Ms. Tang's 1989 termination. Therefore I will briefly clarify the law on this issue. Even if Ms. Tang's discrimination claim cannot be based on her termination of March 1989, evidence of her discharge will be admissible at trial. Though barred by the statute of limitations, past discrimination is relevant background evidence in establishing the defendant's discriminatory intent. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1888, 52 L.Ed.2d 571 (1977); *Sabree v. United Bhd. of Carpenters, Local No. 33,* 921 F.2d 396, 400 n. 9 (1st Cir.1990). In addition, the plaintiff alleges that she was retaliated against for filing discrimination charges with the RICHR and EEOC. Under 42 U.S.C. § 2000e–(3), the plaintiff must prove that she had a reasonable, good faith belief that a violation occurred, that she acted upon it, that the defendant knew of the plaintiff's conduct, and that the defendant lashed out in consequence of her action. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 827 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Petitti v. Massachusetts Dept. of Mental Health,* 859 F.Supp. 33, 40 (D.Mass. 1993). Clearly the plaintiff must be allowed to introduce evidence relating to the good faith basis for her original discrimination complaint in order to prove her retaliation claim. *See, e.g., Hawkins v. Hennepin Technical Ctr.,* 900 F.2d 153, 155–56 (8th Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990) (holding that in a retaliation suit plaintiff should have been allowed to introduce evidence of the activities complained of and their disposition "beyond the

bare fact that a complaint was made"). Because past discrimination is relevant to both the defendant's discriminatory intent and Ms. Tang's retaliation claim, evidence of claims that were resolved in the arbitration award would be admissible at trial.

### CONCLUSION

Although the law carefully distinguishes between the res judicata effect of settlements and arbitration awards, this distinction has little practical consequence in the present case. Regardless of the nature of the prior resolution, evidence of the plaintiff's 1989 termination will be admissible at trial, her recovery cannot duplicate her previous award, and her claims based on post-termination discriminatory acts will remain viable. This distinction affects only the question of whether the plaintiff can, in part, base her present claim of discrimination on the 1989 termination. If the prior resolution was an arbitration award, the plaintiff may proceed with her case, even if the only act of discrimination she can prove is the 1989 termination. However, if the prior resolution was a settlement, the plaintiff must prove discriminatory acts which occurred after the settlement, or her case will be dismissed. Neither side has submitted the written resolution itself or affidavits to support its position regarding the nature of the resolution. In any case, as this is a motion to dismiss, this Court must accept the plaintiff's description of the resolution as an arbitration award.

For the reasons stated above, the defendants' motion to dismiss the plaintiff's claims relating to her March 1989 termination under res judicata is DENIED.

SO ORDERED: